**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**

**DEC 22 2017**

**JEFFREY P. COLWELL**
**CLERK**

Civil Action No. _____

(To be supplied by the court)

Michael ~~Bacote~~ Bacote JR _____, Plaintiff,

v.

Federal Bureau Of Prisons   Official Capacity

DR. Frank Davis (Psychology) __, Official Capacity

DR. Shannon Mann (Psychology), Official Capacity

_____,

_____,

_____,

_____,

_____, Defendant(s).

(List each named defendant on a separate line.)

---

**PRISONER COMPLAINT**

---

(Rev. 1/30/07)

**A. PARTIES**

BacotE JR

1. Michael Bacote JR 05835-007 ADx Florence
(Plaintiff's name, prisoner identification number, and complete mailing address)
P.O. Box 8500 Florence, Co 81226

2. Federal Bureau OF Prisons 5880 State H.W.Y
(Name, title, and address of first defendant)
South Florence 81226

At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? ___ Yes ✓ No (CHECK ONE). Briefly explain your answer:

_____

_____

3. DR Shannon Mann (Psychology) 5880 State H.W.Y
(Name, title, and address of second defendant)
South Florence 81226

At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? ___ Yes ✓ No (CHECK ONE). Briefly explain your answer:

_____

_____

4. DR. FRANK Davis Psychology 5880 State H.W.Y
(Name, title, and address of third defendant)
South Florence 81226

At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? ___ Yes ✓ No (CHECK ONE). Briefly explain your answer:

_____

_____

(If you are suing more than three defendants, use extra paper to provide the information requested above for each additional defendant. The information about additional defendants should be labeled "A. PARTIES.")

(Rev. 1/30/07)                    2

## B. JURISDICTION

1.  I assert jurisdiction over my civil rights claim(s) pursuant to:  (check one if applicable)

    _____   28 U.S.C. § 1343 and 42 U.S.C. § 1983 (state prisoners)

    ✓   28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal prisoners)

2.  I assert jurisdiction pursuant to the following additional or alternative statutes (if any):

    _____

    _____

## C. NATURE OF THE CASE

**BRIEFLY** state the background of your case.  If more space is needed to describe the nature of the case, use extra paper to complete this section.  The additional allegations regarding the nature of the case should be labeled "C. NATURE OF THE CASE."

Eighth Amendment claims

## D. CAUSE OF ACTION

State concisely every claim that you wish to assert in this action.  For each claim, specify the right that allegedly has been violated and state all supporting facts that you consider important, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific cases to support your claim(s).  If additional space is needed to describe any claim or to assert more than three claims, use extra paper to continue that claim or to assert the additional claim(s).  The additional pages regarding the cause of action should be labeled "D. CAUSE OF ACTION."

1.  Claim One:  _fail to teat and acknowledge Acute mental Illness, Prohibit housing mentally ill Inmates 5100.08_

Supporting Facts: Conditions of Confinement in Isolation) Rec, Room, and Cages.

(Programs and D.H.O)

Placement in lock Down As punishment for the Symptoms of mental Illness

D. Cause of Action

## Nature of the Action          Official Capacity

This Lawsuit Concerns the Federal Bureau of Prisons (B.O.P) and B.O.P Staff treatment of Michael Bacote, A prisoner housed at the United States Penitentiary Administrative Maximum Facility in Florence Colorado (ADX) Michael Bacote seeks and injunctive Relief Requiring B.O.P to Comply With its Existing Policies Regarding the treatment of Mentally ill prisoners, And with the Requirements of the Eighth Amendment

## Mental-Health Allegations

Bacote has Suffered serious mental disabilities throughout his life. While in primary school, He Repeated kindergarten And the First grade twice, And Repeated the second grade three times, tests conducted while Bacote was in the second grade found his Reading levels to be at a pre-kindergarten level. At age twelve, He was still in the fourth grade, Bacote stopped going to school when He was thirteen confirmed that He is illiterate, And He tested far below his age group in every tested subject. As a twelve year old. Bacote was prescribed medication for psychiatric problems at an early age. including the Antipsychotic Mellaril, He began taking adderall for attention deficit disorder at age twelve

in Connection with his prosecution for his Role in a murder that occurred at (USP Beaumont) psychologist Dr. Ray Coxe conducted an evaluation of Bacote mental functioning. Dr Ray Coxe tests found that Bacote had a full scale (IQ) in the mildly impaired Range of 61, And verbal and performance IQ in the first percentile. Dr. Ray Coxe diagnosed Bacote as suffering from mild Mental Retardation.

in 2003 Bacote was diagnosed by B.O.P Psychiatrists as having Recurrent Major Depressive Disorder Bacote has been prescribed medication to treat this condition.

Bacote has also been observed by (B.O.P) Psychiatrist in 2008 as displaying severe paranoid ideation. And while a prisoner at USP Beaumont, Bacote was prescribed the Antipsychotic Risperdal to treat his paranoid Behavior. At ADX, Bacote has again displayed paranoid ideation. For example, Bacote has Alleged that there is a staff conspiracy to kill him. While housed at USP Beaumont, Bacote Repeatedly alleged that the staff was planning to hang him in Recreation #Cell 6, claiming that He had Already informed his family and Attorney of his impending murder, and Advising his B.O.P Psychiatrist to skip their next scheduled session so that the Psychiatrist would not get caugh up in the legal troubles surrounding Bacote murder.

the B.O.P and Psychology Dr J. Coulter is Aware that Bacote suffers from Bipolar, Major Depressive, And Paranoid Ideation, Bacote Received these diagnoses from (B.O.P) Psychiatrists, the B.O.P and Dr. Davis, Dr. Mann, and Dr. Coulter, Dr. Clemmer is also aware that Bacote suffers from Mild Mental Retardation, Because Dr. Ray Coxe's report which diagnoses Bacote with Mental Mild Retardation, was provided to the B.O.P Dr. Anne Clemmer, Dr. Coulter, Dr Mann, and Dr Davis who works At (ADX Prison) However the (B.O.P) and Dr. Frank Davis, Dr. Clemmer And Dr. Coulter has Refused Bacote Repeated Requests for Mental Health Assistance

in August 2009 Bacote Requested treatment for his mental illness and mental Retardation and to Be transferred from (ADX) that Request was denied, B.O.P Psychology Dr. Clemmer stated that a Review of your file does not indicate you Are mentally ill or mentally Retarded. So therefor you will not Be transferred

in 2010 the B.O.P Psychology Dr. Paul G. Zohn diagnoses Bacote with Bipolar / Mood disorder

in April 2011 Bacote Requested treatment for his mental Retardation, and transfer to Another facility. that Request was denied the B.O.P Psychology Dr. J Coulter and Dr Anner Clemmer Claimed that Bacote did not meet Its Criteria for a diagnosis of Mental Retardation. Nor did Bacote qualify for a transfer, Psychology Dr. Coulter and Dr. Clemmer determined

The Fact Alleged in the Complaint Shows the B.O.I is Failing to
ACKNowledge Bacote Diagnoses of Serious Mental Illnesses
Official Capacity

ON OR AROUND July 26, 2011, July 31, 2011, August 7, 2011 Bacote
filed to ADX Prison officials, Requesting treatment For his Mental Illness
And Mental Retardation. These Request were Denied. Bacote is Illiterate
However, He managed to Complete this Paperwork with the Assistance
of Other Prisoners.

Bacote PARANOIA Also Strongly Affects his Willingness to take Medication
in the PAST, Bacote has alleged that the Pills He is Prescribed Change
in Shape and color everyday He Sees this As Evidence that the
Medication is Being tampered with in An Attempt to kill him. He has
Claimed that Certain Pills He has Received make him feel intoxicated

IN 2010 the B.O.P DR. Daniel Severn (Psychiatrist) talked to Bacote, and
Bacote has Requested to the B.O.P DR. Severn to Be Place on his Medications
For his Mental Illness, Depressive, Bipolar and Paranoid and DR. Severn
Stated that Some of the Medications that I Requested for is not
available at the ADX Prison And that I will Be Place only on the
medication (Risperdal) to treat my Paranoid Behavior and not my
Bipolar and Depressive, B.O.P DR. Severn has Order that my
medication Bein Power form this alleges Facts showing that the
B.O.P DR. Severn is Refusing to Adequately deliver even Prescribed
treatment to Bacote, MR Bacote has Been Prescribed Psychiatric
Medication while Bacote is Able to take medication in Pill form, He
is Unable to take medication in Crushed form due to his Well
Documented Severe Paranoia Bacote is Extremely fearful that
Consuming An Unknow Crushed Substance As opposed to A Recognizable
Pill Could kill him or make Bacote Sick Nevertheless the B.O.P DR.
Severn insists on delivering Bacote Medication As a Crushed Power
So there For Bacote is not taking no Medications As of Now. this
is Not A Mere disagreement with Medical STAFF As to the Proper
medical treatment there is No Suggestion in the complaint that
Any medical or mental Health Provider Recommended Crushing Bacote
medication the Complaint Specifically Alleges that delivery of Medication
in Crushed form negatively Impacts the affectiveness of the
Medication of the Medication Can Cause Other Health Problems Bacote
PARANOIA (which is Know to the B.O.P Prevents Bacote from taking
Prescibed mental Health medication if Crushed the B.O.P decision
to Crush Bacote medication For No Medical Reasons which has the
Effect of depriving Bacote of Necessary Mental Health treatment

(3

Constitutes An Eighth Amendment Violation, Because the B.O.P
Dr. Daniel Seveen denied Bacote of his Bipolar And Depressive
Medication is in Violation of the Eighth Amendement. in order to
Satisfy the constitution, medical staff must have Available to
Bacote the modalities to Provide inmates with necessary care

Ramos v. Lamm 639 F.2d 559, 575 (10th Cir 1980) Also (see) 509
U.S. 25-31-32 (1993)

Bacote has Writing Reqests to the (B.O.P) Psychology Department DR. FRANK DAVIS and DR. Shannon Mann that Bacote are having Experincing of Depression despair and Anxicty, Rage and Problems with his Impuls Control and Impaired ability to think And Concentrate Bacote Believe that People on (TV) Are Directing Special Message to him and that Radio Stations Are Broad Casting his thoughts Aloud to Others, Bacote is Very Paranoid And having Suicidal Behavior. Bacote is suffering Specific harm that is not Speculative OR theoretical, Harm which the (B.O.P) DR. FRANK DAVIS, AND DR. Shannon Mann is Ignoring. Bacote has Attemeted Suicide while At AOX Prison Bacote have a Documented History of Suicidal Ideation, and Paranoid Ideation And the (B.O.P) Psychologys Dr. FRANK DAVIS, and DR. Shannon Mann has Subjected Plaintiff Bacote to a Substantial Risk of Serious harm and injury Helling, 509 US 25-31-32 (1993) Mata V. Saiz 427 F.3d 745 751 (10th cir 2005) the defendant DR. FRANK Davis and DR. Shannon Mann Knew of and disRegarded AN Excessive Risk to Bacote Health and Safety (FARMER 511 U.S. At 837) And DR. FRANK Davis, And DR. Shannon Mann has DisRegarding this harm By Continuing to housed Bacote at AOX Prison Solitary Confinement. DR Shannon Mann also DR FRANK Davis deprived of Bacote A medical need that is objectively, Sufficiently Serious FARMER V. BRENNAN 511 US 825 834 1994

it Cannot Be denied that Suicide is an Exessiv Risk Such Allegations Satisfy the Subjective Element of An Eighth Amendment (SEE) Saradakowski V. Clements NO 12-cv-0132C-RBJ-KLm, 2013 wl 3296569 *8 D. Colo July 1, 2013) Inmate Placement where Complaint Suicidal Behavior, And DisRegarded, Prison Knew of mentally ill Plaintiff SELF-HARMING And Suicidal Behavior And DisRegarding Substantial Risk to his mental Health By Placeing And Retaining Plaintiff in Solitary Confinement, in 2008 Bacote was diagnosed By (B.O.P) Psychiatrist As having Paranoid Ideation Behavior and was Prescribed (Antipsychotic Risperdal) again in 2008 Bacote was diagnosed By B.O.P Psychiatrist As having Recurrent Major Depressive Disorder And has Been Psychiatrist medication to treat this Condition. Again Bacote was Diagnosed in 2009 By B.O.P DR. Ray Cokes to Be Mentally Retarded, And again in 2011 Bacote was Diagnosed By the B.O.P DR Paul G Zohn of having Bipola /mood Disorder. the B.O.P has Assigned mentally ill Prisoners to ADX, Often disRegarding Prior mental Health Evaluations of Such Prisoners By B.O.P Own Psychiatrists And Psychologists, Which DR FRANK DAVIS, and DR SHANNON Mann has disRegarded Prior B.O.P mental Health Reports and Evaluation that Bacote

5

has giving to DR. FRANK DAVIS AND DR SHANNON MANN in HAND
And Still DisRegarded Bacote medical need that meet this dEFinition
that is HARM CAUSED By A GoveRNment ActoR DR FRANK DAVIS And
DR SHANNON MANN (SEE)
Kikumura V. Osagie 461 F. 3d 1269, 1292 (10ᵗʰ cir 2006) Also See
Robbins V. OklaHoma 519 F. 3d 1242, 1244 (10ᵗʰ cir 2008 delay in CaRe, INMATE
must show that the delay Resulted in Substantial HARM And aggin
in 2015 the B.O.P Psychiatrist DR. KHalid El-Sayed And the
B.O.P) Psychologist DR. Andrea Tobias interview ᴮᵃᶜᵒᵗᵉ And Both has
Diagnoses (Bacote) having loss of memory and DepRessive
Disorder. And once aggin DR SHANNON MANN AND DR FRANK
DAVIS have disRegarded the B.O.P Psychiatrist Diagnoses,
DR FRANK DAVIS AND DR. SHANNON MANN has wRote in my
File that Bacote is not Mentally Ill oR Mentally RetArded
Without A Valid medical oR Mental Health Reason

The Complaint Sufficiently Alleges Facts Establishing the Subjective
Element of Bacote Eighth Amendment Claims Against B.O.P

Doctor as mandating treatment or one that is so obvious and
Recognize the necessity for a Doctor Attention
Ramos V. Lamm 639 F.2d 559, 575 (10th cir 1980) which the (B.O.P) and
Dr. Davis and Dr Mann have Denied Bacote of, and Mental illness is
Sufficiently Serious (SEE)
Riddle V. Mundragon 83 F 3d 1197, 1203 (10th cir 1996) Bacote must Allege
that Subjectively the defendants B.O.P Dr Davis and Dr mann knew
of and disRegarded an Excessive Risk to Bacotes Health and Safety
Farmer 511 US at 837 this complaint Sufficiently alleges facts
Showing that the B.O.P Dr. Davis and Dr mann knew of and
disRegarded excessive Risks to Bacote mental Health and Safety
the B.O.P (Dr. Davis) and (Dr. mann) who disRegarded Bacote well
Documented mental Illnesses and Denied Bacote Appropriate
treatment and Placement. the Subjective Component deliberate
indifference Requires a Showing that the Inmate Symptoms are
such that a Prison Employee Dr. Davis, Dr. mann knew the Risk to
the Prisoner (Bacote) and Chose (Recklessly) to disRegard it
Martinez V. Beggs 563 F. 3d 1082, 1089 (10th cir 2009) See also
Garrett V. Stratman 254 F 3d 946, 949-50 (10th cir 2001) the Prison
Official must Be Both aware of facts from which the inference
Could Be drawn that a Substantial Risk of Serious harm Exists and
He must Also draw the inference (Farmer 511 U.S. at 837) moreover
Bacote has Sufficiently Alleged the Subjective Component of his Eighth
Amendment Claims Whether the defendants knew of and disRegarded
an Excessive Risk to Bacote Health or Safety is a Question of fact
Subject to demonstration in the usual ways. including inference
from Circumstantial Evidence and a fact-finder may Conclude that
a Prison Official knew of a Substantial Risk from the Very fact that
the Risk was Obvious Farmer 511 U.S. at 842 and even for the official
Capacity Claims Bacote still Plead Sufficient facts Showing Specific
B.O.P Official (Dr. Frank Davis, and Dr Shannon mann) had the Requisite
Subjective intent (See Farmer, 511 U.S. at 845-47 noting that the Subjective
Component is a necessary element of deliberate indifference Claims for
Official Capacity Claims for injunctive Relief.

ADX Prison Prohibit housing mental Ill Inmates
PROGRAM Statement 5100.08
OFFICIAL CAPACITY

Indeed the B.O.P own Policies Prohibit housing Inmates with
Serious mental Illnesses at ADX Prison 5700.08 AS Alleged in the
Complaint, Such Policies Reflect the (B.O.P) DR. F DAVIS, And DR S MANN
Knowledge Of the Substantial Risk of Harm that Placement at (ADX)
Poses for Inmates with Serious mental Illnesses. the B.O.P And
DR F Davis, DR. S MANN Failure to Follow its own Policies Regarding
Bacote Placement Centainly Provides Circumstantial Evidence that
it Knew of A Substantial Risk of Serious Harm
Mata V. Zaiz 427 F.3d 745, 751 (10th Cir 2005) See Also
Tafoya V. Salazar 516 F.3d 912 919 (10th Cir 2008) Knowing Failure to
Enforce Policies necessary to the Safety of Inmates May Rise to the
level of deliberate Indifference Because the Complaint Sufficiently
Alleges that the B.O.P (DR F. Davis, (DR S MANN) mental Health Knew of And dis
Regarded housing Bacote at a ADX PRISON   Despite Policies, the
B.O.P has Assigned mentally Ill Prisoners to ADX, Often dis-
Regarding Prior Mental Health evaluations of Such Prisoners By
(B.O.P) own Psychiatrists And Psychologists

ON 8.17.14 Bacote was interview by the (B.O.P) Psychiatrist
Dr Hhalid El-Sayed and By (B.O.P) Psychologist Dr Andrea Tobias
and they diagnoses Bacote as (loss of memory) and (Depressive)
and the (B.O.P) DR. Davis and DR. Mann have still disregard
of moving Bacote to a mental Health Placement and also Dr. Mann
and Dr. F. Davis has wrote in Bacote File that Bacote dont have
mental Illnesses. The May 2015 Evaluation was order not to
Reconcile a discrepancy Between Proposed diagnoses But to
Minimize Bacote Serious mental Illness and assign Bacote a
diagnosis with a disorder that the (B.O.P) does not classify as
a Serious mental Illness and which the (B.O,P) DR. Davis, DR. Mann
Considered to be Non-treatable, this Reconciliation Process had
the effect of Downgrading multiple Inmates Including Bacote
with out a Valid medical or mental Health Reasons Further It
Resulted, it Resulted in Serious Harm to (Bacote) and ongoing
Improper Placement of Several Inmates at ADX For Example ADX
Inmate Boyd HigginBotham Committed Suicide After Dr. Kimble
and Dr F Davis downgraded Mr. HigginBotham diagnosis
through the (B.O.P) Illegitimate Reconciliation Process. Dr. Davis
Dr. Mann, and Dr Kimble Knew the Risk to the Prisoner (Bacote) and
Bacote Symptoms and Chose (Recklessly) to disRegard it
Martinez V. Beggs 563 F. 3d 1082, 1089 (10th Cir 2009) Despite the
B.O.P) DR. Davis, and DR. Mann Knowledge of Serious mental Illnesses
and the Risks of Such Serious illnesses the (B.O.P) DR.F Davis, and
DR. Mann has denied Bacote Appropriate mental Health treatment
and medications
Estelle V. Gamble 429 U.S. 97, 102 (1976) Prison officials
deliberate indifference to a Prisoners Serious medical needs
Violates the Eighth Amendment.

Conditions of Confinement
deliberately indifferent                    Official Capacity

The (B.O.P) Dr. Frank Davis and Dr Shannon Davis is aware of Bacote serious mental Illnesses, But is also well aware that the extreme Conditions of Confinement at ADX the B.O.P most Severe and Restricted Facility Imposes excessive Risks on Bacote and the mentally ill Inmates the B.O.P Dr Frank Davis and Dr Shannon mann Knows of the Psychological dangers of Extended Periods of Confinement in Islation including Confinement at ADX Prison will Causin Harm and degeneration. Bacote has Been housed in ADX Confinement over 9 years with Mental Illnesses and mental Retarded, and Dr. Frank Davis and Dr. Shannon mann Place Bacote at ADX to Remain Forever, and Dr. Frank Davis and Dr Shannon mann only to disRegard Bacote mental Illness and a Placement at a Mental Health Unit which Bacote have Requested. Bacote is is entitled to Be ~~Confinely ment~~ Confined in an environment which dose not Result in Bacote degeneration or which threaten Bacote mental and Physical well Being Battle V. Anderson 564 F. 2d 388, 403 (10th Cir 1977) the Isolation Conditions are harming Bacote and that Bacote has attempt Suicide many of times, that went Disregarded and not noted, and Bacote Conditions will only get worse

DM V. Terhune 67 F. Supp 2d 401, 403 DNJ (1999) while at ADX Prison Inmate David Shelby Age 47 white ~~to~~ Believe to Hear the voice of God which at One point Commanded him to eat his finger, in Response Inmate David Shelby Amputated his Pinky, cut it into Pieces and swallowed it with Ramen ~~noodle~~ noodle Soup. And again Inmate John Jay Powers Age 50 white while at ADX mr Powers has amputated his testicle, Bitten off his finger, also Amputated his Scrotum and Repeatedly attempted Suicide. And again while at ADX Prison Inmate Marcellus Washington Repeatedly Attempted Suicide when He Attempted to Cut his wrists with a Razor Blade ADX officials Punished him with A seven day loss of Television and Radio Privileges But did not Provide him with any treatment For mental illness. Also Inmate Boyd Higginbotham had serious mental illnesses and Dr. Frank Davis, and Dr. Kimble, Dr. Shannon mann, have Down grading, Inmate Boyd mental Illness and it Resulted in Serious harm, Because Soon after Inmate Boyd Higginbotham Committed Suicide. And the Continued of Confinement of mentally ill Prisoners exacerbate their mental Illness which in turn Causes Bacote to Become dangerous to himself and Others and leads to aggressive and violent Behavior, which is in turn Used By the Psychology and Correctional Staff as Justification For Incident Reports and Futher acts of extreme Isolation and violence directed at the Prisoner

10

A considerable Number of Prisoners fell After even a short Confinement into A semi fatuous condition from which it was next to impossible to Arouse them And Others became violentley insane And Other still committed suicide while those who stood the ordeal the Records shows that ~~Islot Isolation~~ Isolation A Human Being from other Human Beings, year After year or even month After month Can cause substantial Psychological damage even if the Isolation is not total Langley V. Coughlin 715 F. Supp 522, 540 (SD NY 1989

11

Recreation Rooms outside and inside

ADX B.O.P has Denial Inmate (Bacote) of Adequate Running Water and Toilets Facilities in the Prison (outside) and (Inside) Recreation Room for the Inmates therefor Inmates are made to used the Rest Room (inside and outside Recreation Rooms) on the Floor other inmate are made to work out after that Person uncleariness and Aint no (C.O. Staff) going to take a Inmate Back to it cell and then wait until that Inmate are done, to take him Back to Recreation so therefor the Inmates must for fit they Recreation. By Law ADX B.O.P Prison suppose to have Toilets and Running Water in all of the Recreation Rooms (outside and inside) see.

Despain V. Uphoff 264 F.3d 965 (10th Cir 2001) and the B.O.P has fail to supervise Bacote claim. 992 F.2d 1053, 1055 (10th Cir 1993) and Inmates cant Play Hand Ball or Basket Ball, and thats more Psychological damage to the Inmate (Bacote) the Harm likely to Accrue to Bacote as a Result of Particular Conditions of Confinement

Jordan V. Gardner 986 F.2d 1521, 1526 (6th Cir 1993) also see

Jones V. Berge 164 F. Supp 2d 1096, 1125-28 (W.D Wis 2001)

12

## Exhibit 4



ADX Outdoor Individual Recreation Enclosure
(Control Unit or SHU)

MICHAEL BACOTE, 05835-007
FLORENCE ADMAX USP    UNT: G    QTR: Z02-105LDS
PO BOX 8500
FLORENCE,  CO 81226

RECEIVED

JUL 25 2013

ADX Warden's Office

U.S. Department of Justice

Federal Bureau of Prisons

*ISSUED 10-1-12*

**Central Office Administrative Remedy Appeal**

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: BACOTE MICHAEL     05835-007     SHU     ADX

LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A - REASON FOR APPEAL** ADX Prison has Denial of Adequate toilets facilities in the (SHU) Prison do not have toilets or Running water for the Inmates doing outside or inside Recreation therefor Inmates are made to used the Restroom in and out side on the flood and others Inmates are made to work out After that Person Uncleanliness or dint Receive Recreation By law its suppse to be toilets and Running water in Recreation Rooms (DESPAIN V. Uphoff 264 F.3d 965 10th Cir 2001)

10.2.2012
DATE

*Michael Bacote*
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
OCT 10 2012
Administrative Remedy Section
Federal Bureau of Prisons

DATE                          GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE          CASE NUMBER: _____

**Part C - RECEIPT**          CASE NUMBER: 696646-A1

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION
SUBJECT: _____

DATE                          SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)

**Administrative Remedy No. 696646-A1**
**Part B - Response**


This is in response to your Central Office Administrative Remedy
Appeal in which you complain there is insufficient restroom
facilities for ADX inmates participating in Recreation in the
Special Housing Unit (SHU).  You state the institution is
required to have toilets and running water in Recreation rooms.

The Warden and Regional Director adequately addressed the issues
raised in your appeal and we concur with the responses provided.
As indicated, SHU Recreation areas are cleaned regularly.  In
addition, there are procedures in place to return an inmate to
his cell to use the restroom if needed.  If you have an urgent
situation, you should advise staff for immediate assistance.

This is response is provided for informational purposes.


July 15, 2013
_____
Date

_____
Harrell Watts, Administrator
National Inmate Appeals

Programs And DR. Plaintiff Seek Relief
Eighth Amendment Violation      Official Capacity

Plaintiff Bacote has Been determine to Be mentally Retarded
From 7 years old Repeatedly By the courts in Washington D.C.
and Beaumont-TX medical Staff (See) Heller V. Doe 509 US 312,723
(1993) the field has noted mental Retardation is a Permanent
Relatively Static Condition. Plaintiff Bacote and Custody By
the Bureaus of Prisons (B.O.P) At (ADX Prison) stands without
Penological Justification in Violation of the Eight Amendment
there Exist No Programs Services or Staff to Provide For the
need of Bacote mental Retardation Condition, the Psychologist
DR F Davis, and DR S Mann has Shown deliberater indifference
Toward Bacote mental Illnesses and Bias. Bacote is in Solitary
Confinement and Severely developmentally disable Bacote Can
not Read nor write while all of the Programing At the ADX
Prison Require that Inmates Be able to Read and write in
order to advance through the Step Down Program. the
(Education) Department (MS Montoya) and the (Recreation)
Department (MR Garcia) And (Psychology DR. FRANK Davis, and
DR. S Mann.) Bacote is Unable to Understand, Read, and Participate
in the work Book Forms Provided to the Inmates population Each
week So therefor Bacote will not Receive the credits From the
Psychology, Education and the Recreation Departments. due to
Bacote mental Retardation, in all Staff has DisRegarded the Fact
that Bacote is mentally Retarded. Bacote is Being penalized for
Being Intellectually disable. Bacote is in the General population
where Inmates Suppose to have more Contact and more Freedom
to move without Restraint, the ability to make Phone Calls and Posses
more personal Property and able to Better Care For their Health, get
A Job And (earn a trade (See)
Jackson V. Carey 353 F. 3d 750, 755-6 (9th cir 2003) But Bacote have in
Fact Suffered Significant Harm as a Result of those deficienies of
Psychology (DR F Davis) And (DR S Mann) Also Education (MS Montoya)
Because Denied Bacote Programs have languished For Bacote without
Acces to the necessary Care and to Be Lock Down in a Cell For 9 years
And to Be Denied help Bacote Became Psychological decompensation
And Incompetent, 215 F. 3d at 915 and Bacote mental Health are
having a adversely Affect (See)
Fogle V. Pierson 435 F. 3d At 1252, 1259 (10th cir 2006) Because DR F. Davis,
And DR S. Mann are having Bacote Under the Extreme Conditions

⑬

of Confinement over 9years (see)
Koch V. lewis 216 F.Supp 2d at 994, 1001 (D. ARiz 2001) and the Harm
of the Condition of ADX that (DR. F. DAVis) and (DR S. MANN) is and
Education Department is Denied Bacote Programs, the Help Bacote
need. the Conditions of the prison is harming Bacote (see)
Jordan V. Gardner 986 F.2d 1521, 1526 (6th cir 1993)

Psychology statements At (D.H.O)

Official Capacity

---

All staff has disRegarded the fact that Plaintiff Bacote is mentally Retarded were He has No Understanding of Prohibited Conduct the Law states that Inmates with mental Filments who Cant Understand what they are doing is wrong should not Be given Incident Reports For that Prohibited Conduct (See) 28 CFR 541.10 (b)(6.1) were it states Regardless of Plaintiff mental Retardation status the Discipline Hearing officer ms. S. Beick Refuse to Abide to the Law As stated Above Confinds Plaintiff (Bacote) guilty of Prohilited Conduct Bacote will tell the DHO that He are mentally ill, and mentally Retarded And to call the Psychology Department only for the Psychology DR Shannon Mann And DR Frank Davis to only tell the DHO ms S. Beick that I Am Not mentally ill or mentally Retarded Even when Plaintiff (Bacote) show the D.HO ms S. Beick Reports from the Court Psychologys that Bacote is mentally Retarded. the D.HO Still Finds Bacote guilty. Courts Have help that in A Disciplinary Hearing in which A Prisoner mental state is a Issue, Hearing officers Are to Consider Evidence Regarding the Inmate mental Condition (SEE) Huggins V. Coughlin 76 N.Y. 2d 904, 905, 561 NYS 2d 910, 911 563 N.E. 2d 281,282 NY (1990) Also See Reed V. Scully 140 2d 379, 382, 531 NYS 2d 196 N.Y. Sup. Ct. (1988) the mental Competence and mental Illness of a Prisoner must Be Considered during the Prison disciplinary Process where a mental disease or defect adjudication has Been made or a well documented History of Serious Psychiatric Problems calls the Prisoner mental into Question (See) Zamakshar V. Droskin 889 F. Supp 1097, 1104 (SDNY 1995) Plaintiff (Bacote) has Produce Records Evidence to this disciplinary Hearing and to Psychology (DR Frank Davis) And (DR Shannon Mann) which due Process may Require Production of Evidence when it is the dispositive item of is Critical to the Inmate defense (SEE) Young V. Lynch 846 F. 2d 960, 963 (4th cie 1988) also Baxter V. Palm 425 us at 315 also Vitek V. Jones 445 us 480, 496-97, 100 S. Ct 1254 (1980) Prisoners who are illiterate and unEducated have a greater need for Assistance in Exercising their Rights and that Counsel is Required for Inmates thought to Be Suffering from mental disease or defect Requiring involuntary treatment Because Such Prisoners are more likey likely to Be Unable to UnderStand or Exercise their Rights (see) Franklin V. District 960 F. Supp 394. 432-33 (O. DC 1997) Bacote is Being Harm Because the Psychology DR. Frank Davis, and DR. S. Mann are Writing

Reports to the (D.H.O) telling the (D.H.O) that Bacote is not mentally ill or mentally Retarded after the psychology Dr FRANK DAVIS, AND DR.S. MANN Know of Bacote well documented History. AND the Psychology Dr DAVIS AND Dr. MANN Still disRegard Bacote mental Conditions Health AND SAFety Mata V. Saiz 427 F.3d 745, 751 (10th cir 2005) AND gave direction to the (D.H.O) to HARM Bacote, By giving Bacote loss of Property, Phone, visits, And CommissAry AND loss of Good Time (see) 992 F.2d 1053, 1055 (10th cir 1993) Also Robbins V. OAl 519 F.3d 1242, 1246 (10th cie 2008) AND By doing this the Psychologys Knows that it will HARM Bacote Psychological Damage the Subjective Component deliberate indifference Requires a showing that the PriSon Employee Dr. FRANK DAVIS AND DR. S MAN Knew the Risk to Bacote And Chose (Recklessly) to disRegard it Martinez V. Beggs 563 F.3d 1082, 1089 (10th cie 2009)

Placement in Lock Down as Punishment For the symptoms
of Plaintiff mental illness violated the Eight Amendment

ARNOLD V. Lewis 803 F. Supp 246, 256 (D. ARiZ 1992) Also SEE)

Coleman V. Wilson 912 F. Supp 1282 Dist Court ED Cal 1995

Official CAPACity

Defendants (DR. FRANK DAVis) And (DR. SHANNON MANN) And the (B.O.P)
have Place Bacote in lock Down confinement to Punish Bacote For his mental
Hostile, threatening Behavior that is the ResuIt of Bacote mental
illness and when Bacote dose not Receive or take his medication
Bacote Can Become hostile and threatening And when Bacote are
taking his medication And Receiving appropriate treatment Bacote is
not Hostile or threatening, Bacote, Behavior for which HE is (Lock Down)
dose not ResuIt From a Personality disorder, Bacote have Been At
ADX PRison Lock Down For over 9 years With no treatment, no medication
when HE should have Been transferred to a mental Health unit, But
was not tranferred, Because the (B.O.P) and Psychologys DR FRANK Davis,
And DR SHANNON MANN will not acknowledge Bacote mental Health, only
to try to Downgrade Bacote mental Health. Lock Down at ADX in a small
Cell Inmates Are Confined to these Cells For 23 hours A day and
Allowed 1 hour out side in a cage, Cant Play Hand Ball, BasketBall or And
with nothing to do, the mentally ill Inmates like Bacote Are Placed lock
Down For Periods of years At a time. Lock Down generally worsens
symptoms of mental illness and Can Be a traumatice experience for the
mentally ill Inmates Lock Down (SEE.)
Coleman V. Wilson 912 F. Supp. 1282 - Dist Court, ED California 1995) Lock
Down is not A treatment for Bipolar Disorder, major Depressive Disorder,
severe Paranoid ideation, And loss of Memory, mild mental Retardation.
the B.O.P Psychiatrists and Personnel have diagnosed Bacote with and HE
suffers From Serious mental ollnesses. Bacote has Been And will Be Harmed
in the Future if his mental Health treatment Remain the same. Prolong
Lock Down Cannot Provide the therapeutic Setting need By Bacote
Lock Down worsened the Symptoms of Bacote mental Illness
          803 F. Supp. 255 while Lock Down Bacote
deteriorated Psychiatrically this deterioration Harm Bacote. the
defendants, B.O.P and Psychologys DR FRANK DAVIS, And DR.
SHANNON MANN have knowledge of the Harm Caused Bacote But only to
disRegard Bacote Health or Safety (FARMER, 511 U.S. At 837) the (B.O.P)
Staff and Security staff including defendants knew about Bacote
deterioration in Lock Down as Such deterioration Are documented
throughout the medical Records. and Incident Reports. most
of the Incident Reports that were Forward to the Psychology
Department DR. FRANK DAVIS, And DR SHANNON MANN documented
Behavior Indicating that Bacote was having Psychiatric Problems
          (18)

803 F. Supp 258

And Bacote Requested Psychology, Dr Frank Davis and Dr
Shannon mann help, And even when the Incident Reports were
Forward to Psychology Department Dr. Frank Davis, and Dr Shannon
mann only to Said Bacote is not mentally ill or mentally Retarded
which Bacote showed Psychologys the Reports that he had from
the (DC) and (TX) Courts such Failure to Respond to a known medical
Problem Constitutes deliberate indifference Waldrop 871 F.2d at 1036
Prison officers are deliberately indifferent to a Prisoner Serious
when they Deny, delay, or intentionally interere
Wood v. Housewright 900 F.2d 1332, 1334 (9th cir 1990) Conditions of
Confinement aggravate Bacote mental Illness and Depression causing
more mid Behavior on Bacote Part and Additional Punishment from
Correctional Staff who are not trained, the treatment was the Result of
Inadequate training of the custodial Staff So that they are frequently
unable to differentiate Between Inmates whose conduct is the Result
of mental illness and inmates whose conduct is unaffected by disease
the Custodial Staff lacks Sufficient training in the identification of
Signs and Symptoms of mental illness, and not to Additional
Punish Bacote with Incident Reports Because of his mental illness.
the (B.O.P) Psychologys Dr. Frank Davis and Dr Shannon mann are
aware of the danger and Risks to Bacote Caused By their Policies and
the Law of long term (Lock Down) confinement. there is Substantial
Evidence in the Record of (Bacote) Mentally illness Being treated with
Punotive measure By the custody staff to Control the Inmate Behavior
Without to the Cause of the Behavior or the Impact of those measures
on the Inmate Bacote mental illness.

The court must Accept All well Plead Facts as true and View them
in the light most Favorable to the Plaintiff

Jordan- Arapahoe, LLP v. Bd. of Cnty 633 F.3d 1022, 1025 (10th cir 2001 in
concert with this standard, Rule 8(A)(2) Requires only that a civil
Pleading Contain a Short and Plain Statement of the Claim Showing
that the Pleader is entitled to Relief (See)
Casanova v. Ulibarri 595 F.3d 1120, 1125 (10th cir 2010) Finally, A defendant
may Be aware of improper treatment of Prisoners through the Administrative
grievance Process (See) Green v. Fed. Bureau of Prisons No 07-CV-1011-DME-
MEH, 2009 WL 150650 at 4 (D. colo Jan 21, 2009) Green Frequent
Administrative Complaints were more than Sufficient to State a Claim

with Regards to the defendants Knowledge of the Substantial Risks Green Faced, Bacote Pleads that on multiple occasions Bacote Filed numerous Cop outs And Administrative complaints to ADX Prisons officials Requesting treatment For his mental Illness And mental Retardation all of these Requests were denied these Complaints Alone are sufficient to Support the Subjective Component of Bacote Eighth Amendment Claim. the DenFendant (B.O.P) Psychologys DR FRANK DAVIS, And DR SHANNON MANN WAS AWARE OF the Risks Bacote Face (See) Green, 2005 WL 150650, At 5

Pg 19

2. Claim Two: _____

    Supporting Facts:

3.   Claim Three: _____

     Supporting Facts:

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ✓ Yes ___ No (CHECK ONE). If your answer is "Yes," complete this section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit:

   *B.o.P*

2. Docket number and court name:

   *1-13-CV-02589 REB-KLM*

3. Claims raised in prior lawsuit:

   *mental Illness/mental Health*

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

5. If the prior lawsuit was dismissed, when was it dismissed and why?

   *I didnt Name the defendant*

6. Result(s) of any appeal in the prior lawsuit:

   *~~dismiss to Refile~~*
   *Refile*

## F. ADMINISTRATIVE RELIEF

1. Is there a formal grievance procedure at the institution in which you are confined?

   ✓ Yes ___ No (CHECK ONE).

2. Did you exhaust available administrative remedies? ✓ Yes ___ No (CHECK ONE).

(Rev. 1/30/07)                    7

## G. REQUEST FOR RELIEF

State the relief you are requesting.  If you need more space to complete this section, use extra paper.  The additional requests for relief should be labeled "G. REQUEST FOR RELIEF."

(1) Injunctive to Be Remove From ADX to a mental Health Unit

(2) And Remove the outside Rec Cages,

(3) Put Adequate Running water, toilets Facilities outside and inside the Recreation Rooms

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on ___12.19.17___
                        (Date)

___Michael Bacote___
        (Prisoner's Original Signature)

(Rev. 1/30/07)                    8

# Ray Coxe, PhD

**Psychologist**

*Forensic and Family Psychology*

## Report of Psychological Evaluation

| | | | |
|---|---|---|---|
| **Name:** | Michael Bacote | **Date Seen:** 4-18-09 | **Date of Birth:** 9-24-74 |
| **Race / Sex / Age:** | African-American Male / 34 | **Referred By:** | U. S. Attorney's Office Re: *USA v. Michael Bacote*; No. 1:07CR-142 |

**Reason for Referral**   The Court requested an evaluation of Michael Bacote, defendant, to determine his current level of intellectual functioning. He is incarcerated at the federal detention facility in Beaumont, Texas, where he was evaluated. He is charged with a capital offense.

**Notification**   Prior to the evaluation, the defendant was advised of the nature and purpose of the evaluation. Specifically, he was advised that I was hired by the U. S. Attorney to conduct an evaluation of his present mental functioning. He was told that the evaluation would consist of a clinical interview and psychological testing, and that any further information obtained in the course of this evaluation would not be protected by attorney-client privilege. He was advised that a report would be sent to his attorney, the Court, and the U.S. Attorney, and that I might be subpoenaed to testify at a hearing regarding the results of this evaluation. Finally, he was told that his participation was voluntary. He indicated that he understood this information and agreed to participate.

**Mental Status Exam**   I evaluated the defendant at the Federal detention facility in Beaumont. He was shackled the entire time but security did allow his hands to be free for writing and testing purposes. The defendant is an African-American male of average height with a thin, even frail appearance. He reported he is currently taking medication, Risperdal, because he has highs and lows, a bipolar disorder, and is paranoid. His only health concern is a back problem which he said is being treated with medication. He displayed a tic-like movement quickly turning his head to the right. He reports that he wears glasses for reading but did not have them with him; he believes that he can see okay without them. (I did not believe that his not having his glasses interfered with the reliability of the testing.)

The defendant was very friendly, open, and spontaneous. After I again reviewed with him the purpose of the evaluation, he did have a question about how the results would be used, and seemed satisfied with my answer. He was cooperative and I believe his level of cooperation resulted in a reliable assessment of his current functioning. He was in contact with reality but his recall uneven: he misidentified his age as 35 and the year he was born as 1975.

2665 Broadway * Beaumont, Texas 77702 * Telephone: (409) 833-7946 * Fax: (409) 833-3481



**Michael Bacote - 2**
**U. S. Attorney's Office**
Re: *USA v. Michael Bacote*;
No. 1:07CR-142
April 18, 2009

**Tests Administered**

> Wechsler Adult Intelligence Scale III   (WAIS-III)
> Wide Range Achievement Test - 3   (WRAT - 3)

**Cognitive Assessment**   The defendant obtained a Full Scale IQ in the mildly impaired range (FSIQ – 61; 95% Confidence Interval = 58-66). Both the Verbal and Performance IQ's are 64 and also in the mildly impaired range, or at the first percentile. There is a marked consistency in his level of standard scores on all the subtests with no significant strengths or weaknesses identified relative to his average intellectual ability (.05 level). His ability to reason with words (Verbal IQ) is consistent with his non verbal abilities (Performance IQ).

Academically, his scores on the WRAT-3 show that his Reading and Spelling are at the second grade level, or standard scores of 52 and 60, respectively. His Arithmetic score was at a third grade level, or a standard score of 62.

In summary, all of the defendant's standard scores were in the mildly impaired range on both the intellectual and academic assessments, or from a standard score of 52 to 67. These standard scores are also consistent and do not differ significantly from the results of previous testing. (A summary of the previous testing is included as an addendum to this report.)

There was nothing in the defendant's behavior which indicated that he purposely attempted to distort the results in a negative direction. Rather, his test-taking behavior showed that he was very involved in the assessment procedures, appeared to put forth his best effort, and was adequately interested so that reliable results were obtained. He even appeared challenged by the testing, occasionally asking for feedback and showing some frustration when he was not able to obtain a plus response. At one point in the testing, he said, "When we're finished, I want you to show me how to do that." He was referring to one of the Block Design items and when the testing was completed, he again asked that I perform the item for him, which I did. After I did it, he showed obvious disgust with himself that he was not able to obtain an initial plus answer. This behavior is not consistent with a person who is attempting to purposefully fail items.

**Assessment of Adaptive Behavior**   There are admitted difficulties in attempting to obtain a reliable estimate of an individual's adaptive functioning that has been incarcerated most of his adult life. One way I attempted in this was to try to assess with him what his level of functioning may have been prior to being incarcerated. He reports he only went to the third grade, never had a job, and could only purchase simple or single items in a grocery store without help. When he traveled to unfamiliar locations, someone went with him or he gave the cab driver a

Ray Coxe, PhD   *   2665 Broadway   *   Beaumont, Texas 77702



Michael Bacote - 3
U. S. Attorney's Office
Re: *USA v. Michael Bacote*;
No. 1:07CR-142
April 18, 2009

written address.  He never had a driver's license.  These would indicate that functioning independently was problematic for him.  The DSM-IV-TR states, "With appropriate supports, individuals with Mild Mental Retardation can usually live successfully in the community, either independently or in supervised settings."  Standardized assessment of his adaptive functioning done in 1986 showed he had deficits in a number of areas.

## Summary

- Each of the Full Scale IQ's of prior testing fall in the Mildly Retarded range, even the testing performed on 1-31-85.
- Most of the achievement standard scores fall in the mildly impaired range, or primarily at the third grade level or below.  The DSM-IV-TR states, "By their late teens, they (mildly retarded individuals) can acquire academic skills up to approximately the sixth grade level."
- The results of this evaluation are consistent with the results obtained in prior evaluations.
- These results clearly indicate that his lowered IQ scores and adaptive functioning were consistent throughout his life, before the age of 18.
- An early measure of his adaptive functioning (The Vineland Adaptive Behavior Skills Assessment administered 9-24-86) shows a standard score of 55, which is in the mildly impaired range.

**Diagnostic Impression**    The DSM-IV-TR states the essential feature of Mental Retardation is significantly sub average general intellectual functioning, significant limitations in at least two areas of adaptive functioning, and the onset must occur before age 18 years.  Therefore, my diagnostic impression is:

317 – Mild Mental Retardation (DSM-IV-TR)

Respectfully,

Ray Coxe, PhD
Psychologist



Michael Bacote - 4
U. S. Attorney's Office
Re: *USA v. Michael Bacote*;
No. 1:07CR-142
April 18, 2009

**Review of Documents**

1. A psychological report dated 2-3-87 by M. E. Kenel, PhD. shows the defendant was described as suffering from a neglectful background most of his life and placed in special education classes. The summary states, "All verbal skills are severely deficient although at least some of the Performance subtests of the WISC-R show low average or borderline functioning."

2. A social work report by Ms. Roberta Greene shows the biological mother was a substance abuser during her pregnancy and the defendant's birth weight was 3 pounds, 14 ounces; following delivery he was incubated for 1-1/2 months.

3. According to the school records in the social work report, the defendant repeated every grade since kindergarten and was in the second grade for the third time. He was reading on a pre-kindergarten and his math was on a low first grade level. He was in foster care while his mother was incarcerated.

4. A psychoeducational report performed 9-24-86 showed the defendant was 12 at the time and that he was a non reader. On the WISC-R he obtained a Verbal IQ of 52, Performance IQ of 68, and Full Scale IQ of 56.
   • The Bender Visual Motor Testing showed an age equivalent of 6:5 to 7:0 (or about five years below his chronological age). On the Peabody Picture Vocabulary Test - Revised, he obtained a standard score of 49 which is below the first percentile or an age equivalent of 6 years, 0 months.
   • Standard scores on achievement testing (WRAT-3) were Reading - 67, Spelling - 57, and Arithmetic - 56.
   • On the Peabody Individual Achievement Test, he obtained the following scores: Math - 69, Reading and Reading Comprehension - Below 65.
   • On the Vineland Adaptive Behavior Skills Assessment, his adaptive behavior composite standard score was 55.

5. A speech / language evaluation on 12-11-86 (the defendant was 12) showed that on the Utah Tested Language Development he earned a language age equivalent of 7 years, 3 months, or about five years below his chronological age at the time.

6. A report from the Public School District of the District of Columbia dated 1-29-87 (the defendant was 12 years, 4 months) shows that the summary of the previous testing. He is described as having behavior, learning, and speech and language deficits.

Ray Coxe, PhD   *   2665 Broadway   *   Beaumont, Texas 77702



Michael Bacote - 5
U. S. Attorney's Office
Re: *USA v. Michael Bacote*;
No. 1:07CR-142
April 18, 2009

7.  A report from the Shaed Elementary School dated 3-25-87 (the defendant was 12 years, 4 months) described the defendant as suffering from neglect throughout most of his life. All verbal skills are severely deficient while Performance subtests on the WISC-R showed low average or borderline functioning.

8.  A psychiatric evaluation performed by the Government of the District of Columbia dated 12-23-86 states, "Michael presents as an illiterate, depressed child. His attention span is short, his sense-of-self is much diminished, and I feel ... ."

9.  An educational assessment summary performed 1-7-87 showed the defendant scored below the third grade level on each of the subtest categories: math, spelling, and reading. He is identified as a stutterer and academic remediation and speech therapy were indicated.

10. A social study performed 9-28-87 shows that he was retained in kindergarten twice and as a second grade student who failed most of his classes. This report refers to an evaluation performed by a psychiatrist, Dr. Velda Teplitz, who stated the defendant was an immature youth with borderline intelligence.

11. A report from the Youth Services Administration Psychology Department at the Receiving Home for Children in Washington D.C. dated 9-29-87 states the following: "Michael scored below the third grade and is considered non reading and deficient in all areas. He also stutters and is in need of a speech evaluation. Michael would benefit from academic remediation and speech therapy to improve his communication skills."

12. A psychological report from the D.C. Receiving Home for Children shows the defendant was evaluated 2-27 / 3-2-87 (he was 12 years, 5 months old and in the fourth grade). A readministration of the WISC-R after only four months found a Verbal IQ of 59 (previous testing was 52), Performance IQ of 64 (previous testing was 68), and a Full Scale IQ of 58 (previous testing was 56). While the question of practice affects raised validity issues with the second testing, the examiner states, "However, it is interesting to note that Michael's scores differ insignificantly from the previous administration."
    *  The results of retesting with the Bender Visual - Motor Gestalt Test were consistent with results of prior testing.
    *  His score on the Goodenough - Harris Human Figure Drawing was immature and he obtained a developmental standard score of 66.
    *  Achievement test results with the Wide Range Achievement Test - Revised (WRAT-R) indicated the defendant was "far below age and grade level in all measured areas." He achieved at the first percentile in Spelling, .1 percentile in Reading, and .04 percentile in Arithmetic.

Ray Coxe, PhD  *  2665 Broadway  *  Beaumont, Texas 77702



Michael Bacote - 6
U. S. Attorney's Office
Re: *USA v. Michael Bacote*;
No. 1:07CR-142
April 18, 2009

13.  A report from Judith H. Blanchard, M.P. Ed., dated 9-13-86 (the defendant was ten) showed that based on chronological age, the defendant should be a fifth grader. However, his reading skills were those of a first grader. His functioning was described as functioning far below the level of a youth his age and a "serious need" for language therapy to remediate his stuttering, articulation, enunciation, and structural language problems.

14.  An evaluation from the Washington Assessment and Therapy Services dated 1-31-85 and performed under the supervision of Ronald D. Wynne, PhD, shows he obtained a WISC-R Full Scale IQ of 71, Verbal IQ of 68, and Performance IQ of 77. This evaluation was actually done by a psychological associate (Neil Pliskin, M-A) who was under the supervision of Dr. Wynne.

On the WAIS-III, this client obtained the following scores:

|  | IQ | 95% Confidence Interval | % | Range |
|---|---|---|---|---|
| Verbal | 64 | 60-70 | 1 | Extremely Low |
| Performance | 64 | 59-73 | 1 | Extremely Low |
| Full Scale | 61 | 58-66 | 0.5 | Extremely Low |

| Index Score Summary | Scale Score | 95% Confidence Interval | Percentile |
|---|---|---|---|
| Verbal Comprehension | 67 | 63-74 | 1 |
| Perceptual Organization | 67 | 62-77 | 1 |
| Processing Speed | 66 | 61-79 | 1 |

The specific subtest scores are:

| Verbal | Scale Score | Percentile | Non-Verbal | Scale Score | Percentile |
|---|---|---|---|---|---|
| Vocabulary | 4 | 2 | Picture Completion | 4 | 2 |
| Similarities | 3 | 1 | Digit Symbol-Coding | 5 | 5 |
| Arithmetic | 3 | 1 | Block Design | 4 | 2 |
| Digit Span | 4 | 2 | Matrix Reasoning | 5 | 5 |
| Information | 5 | 5 | Picture Arrangement | 3 | 1 |
| Comprehension | 4 | 2 | Symbol Search | 1 | < 1 |

On the WRAT-3, the scores are as follows:

|  | Scale Score | Percentile | Grade |
|---|---|---|---|
| Reading | 52 | 0.09 | 2 |
| Spelling | 60 | 0.8 | 2 |
| Arithmetic | 62 | 1 | 3 |

Ray Coxe, PhD   *   2665 Broadway   *   Beaumont, Texas 77702

## INFORMATION AND INSTRUCTIONS FOR FILING
## A PRISONER COMPLAINT

Attached are the forms you will need to file a Prisoner Complaint. All questions must be answered clearly and concisely in the appropriate space on the forms. Attach an additional page if you need extra space to answer a question, clearly identifying the question to which the additional page pertains. Absent prior order of the court, the total length of the Prisoner Complaint, including the form and all additional pages, may not exceed thirty pages. Pursuant to the Court's local rules, the Prisoner Complaint and all other papers must be typewritten or legibly handwritten, text shall be printed on only one side of each page, all documents must be filed on paper that measures 8.5 inches by 11 inches, and all papers shall include margins of 1.5 inches at the top and 1 inch at the left, right, and bottom.

You should exercise care to assure that all answers are true, correct, and complete. You are cautioned that any deliberately false statement of a material fact may serve as a basis for prosecution and conviction for perjury. You must sign each form. Further instructions for completing these forms are provided below.

### The Filing Fee and 28 U.S.C. § 1915

1.      Prisoners seeking leave to proceed under 28 U.S.C. § 1915 must comply with the following procedures. Section 1915(h) defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

2.      The complaint must be accompanied by the full $350.00 filing fee plus an additional $50.00 administrative fee, for a total payment of $400.00. The fees may be paid in cash, by money order, by credit card, or by check payable to: Clerk, U.S. District Court. There are no fees for a jury demand, an answer, or other similar papers. A schedule of other fees charged by the Court is attacked to the Local Rules of Practice for the United States District Court for the District of Colorado. A copy of the Local Rules of Practice is available from the Clerk of the Court or from the Court's website.

3.      If you want to commence an action without prepayment of fees or security, you must file a motion and affidavit for leave to proceed pursuant to 28 U.S.C. § 1915. You also must submit a signed authorization for disbursement of funds from your inmate trust fund account and a certified copy of your trust fund account statement (or institutional equivalent) for the six-month period immediately preceding the filing of the complaint, obtained from the appropriate official of each penal institutional at which you are or were confined during the six-month period. The Court cannot consider the merits of the claims asserted in any complaint filed without either the required filing fees paid in advance or a properly completed motion, affidavit, authorization, and certified copy of your trust fund account statement (or institutional equivalent).

(Rev. 8/24/15)

4.    If you are proceeding pursuant to 28 U.S.C. § 1915 and the motion, affidavit, and certified copy of your trust fund account statement (or institutional equivalent) are in proper form, you must pay the full $350.00 filing fee in monthly installments. *See* 28 U.S.C. § 1915(b)(1). The Court will enter an order directing your custodian to calculate and disburse funds from you inmate trust fund account or institutional equivalent in the amounts specified by 28 U.S.C. § 1915(b) until the full $350.00 filing fee is paid.

**The Complaint**
1.    Each named defendant must be listed in the caption of the complaint, one defendant per line.   If there is more than one defendant, you should indicate clearly in the body of the complaint which actions are attributable to each defendant.

2.    You must provide the Court with an original complaint.   You should keep a copy of the complaint for your own records.   The Court will not provide a copy for you.

3.    When your complaint is completed, it should be mailed with the filing fee or motion for leave to proceed pursuant to 28 U.S.C. § 1915 to the Clerk of the United States District Court at the following address:

Clerk of the Court
Alfred A. Arraj United States Courthouse
901 19th Street, Room A105
Denver, CO 80294-3589

4.    Each original document (except the original complaint) must include a certificate stating the date a copy of the document was mailed to the opposing party or his, her, or its attorney and the address to which it was mailed.   Any document that fails to include a certificate of service may be disregarded by the Court or returned.   An example of a certificate of service is:

I hereby certify that a copy of the foregoing pleading/document was mailed to
_____ (defendant(s) or counsel for defendant(s))
at _____ (address) on _____, 20 1 7 .

Michael Brode I
_____
Plaintiff's Original Signature

5.    The United States district judges, the United States magistrate judges, the Clerk of the Court, and deputy clerks are officers of the Court and are prohibited from giving legal advice. Legal questions should be directed to an attorney.

(Rev. 8/24/15)