IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 17-cv-03111-RM-NRN

MICHAEL BACOTE, JR.,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

    Defendant.

---

## ORDER

---

This matter is before the Court on (1) the "Report and Recommendation on Defendant's Motion to Dismiss Fourth Amended Complaint (Dkt. #56)" (the "Recommendation on Dismissal") (ECF No. 92), which recommended Defendant's Motion to Dismiss be granted in part and denied in part; (2) the Magistrate Judge's Minute Order (ECF No. 109) denying Plaintiff's Motion for Reconsideration (ECF No. 106); and (3) the "Report and Recommendation on Plaintiff's Motion for Leave to File Fifth Amended Complaint (Dkt. #133)" (the "Recommendation on Amendment") (ECF No. 149), which recommended Plaintiff's Motion to Amend (ECF No. 133) be denied. Both parties filed objections to the Recommendation on Dismissal; Plaintiff filed an objection to the Recommendation on Amendment and the Minute Order. The matters are fully brief and ripe for determination. The Court finds and orders as set forth below, after reviewing the recommendations, the motions, the objections, and other relevant parts of the court record; taking judicial notice of the *Cunningham* action[1]; and considering the applicable law.

---

[1] As defined below.

## I. LEGAL STANDARD

### A. THE RECOMMENDATIONS

On dispositive matters, pursuant to Fed. R. Civ. P. 72(b)(3), this Court reviews de novo any part of the magistrate judge's recommendation that is properly objected to. An objection is proper only if it is sufficiently specific "to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). "In the absence of a timely objection, the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

On non-dispositive matters, where a party timely objects to a magistrate judge's order, the Court must consider such objections and "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997). Thus, objections will be overruled unless the Court finds that the magistrate judge abused his or her discretion or, if after viewing the record as a whole, the Court is left with a definite and firm conviction that a mistake has been made. *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988). "The clearly-erroneous standard is 'significantly deferential.'" *United States v. Cruz-Mendez*, 467 F.3d 1260, 1265 (10th Cir. 2006) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993)).

### B. THE MOTION TO DISMISS

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Brokers'*

*Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). The complaint must allege a "plausible" right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). In addition, the Court "may take judicial notice of its own files and records, as well as facts which are a matter of public record, without converting a motion to dismiss into a motion for summary judgment." *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (quotation marks and citations omitted); *see also, e.g., Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (same); *see St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue" (discussing summary judgment motion)).

### C.  THE MOTION TO AMEND

Rule 15(a) of the Federal Rules of Civil Procedures provides that "[t]he court should freely give leave when justice so requires." But leave to amend may be denied on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, *or* futility of amendment." *Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1315 (10th Cir. 2005) (italics supplied) (internal quotation marks omitted).

### II.   BACKGROUND

Plaintiff Michael Bacote, Jr. ("Plaintiff" or "Mr. Bacote") is an inmate at the United States Penitentiary Administrative Maximum Facility ("ADX"). He filed this action against Defendant Bureau of Prison ("Defendant" or "BOP") seeking relief under various theories. Prior

3

to the filing of this action, Mr. Bacote was originally designated the lead plaintiff in *Cunningham v. Bureau of Prisons*, No. 12-cv-01570-CMA-MEH (D. Colo.) (hereafter "*Cunningham*").[2] The BOP's Motion to Dismiss argued all of Mr. Bacote's claims are subject to dismissal as barred by the settlement in *Cunningham* or for failure to state a claim. The Recommendation relied primarily on the *Cunningham* settlement to recommend dismissal. Thus, the Court begins with the *Cunningham* action.[3]

### A. The *Cunningham* Action

The *Cunningham* action was filed on June 18, 2012 as a putative class action; it alleged Eighth Amendment violations by the BOP in failing to adequately screen and treat prisoners with mental illness.[4] By order dated November 26, 2012, Mr. Bacote was voluntarily dismissed without prejudice by the *Cunningham* Court.[5] The Center for Legal Advocacy d/b/a Disability Law Colorado ("DLC") was subsequently joined as a plaintiff.

After engaging in extensive settlement negotiations, the *Cunningham* parties reached a class action settlement agreement. On November 16, 2016, the *Cunningham* Court preliminarily approved the proposed settlement terms, which requested certification of a class and subclass for settlement purposes under Fed. R. Civ. P. 23(b)(2), and directed that notice be given to the class members.[6] The *Cunningham* Court then held a three-day fairness hearing and heard objections.[7] By order dated December 29, 2016, the settlement agreement was approved.[8] Thereafter, by

---

[2] The Court's references to filings in the *Cunningham* case are preceded by "*Cunningham*."
[3] The Recommendation ably set forth the background; nonetheless, the Court also does so here to the extent necessary to give context to and address the parties' arguments.
[4] ECF No. 55, ¶ 29.
[5] *Cunningham*, at ECF Nos. 39, 40.
[6] *Cunningham*, at ECF Nos. 382, 383.
[7] *Cunningham*, at ECF Nos. 387-389.
[8] *Cunningham*, at ECF No. 391.

stipulated order dated January 17, 2017: (1) a settlement class and subclass[9] were certified under Fed. R. Civ. P. 23(b)(2), for purposes of settlement only; and (2) the *Cunningham* action was dismissed with prejudice, with the *Cunningham* Court retaining jurisdiction to enforce the settlement agreement and other matters. Final judgment was also entered that date.[10]

Named plaintiff Powers, appearing *pro se*, filed and then withdrew an appeal.[11] Named plaintiff Cunningham also appealed, challenging the approval of the settlement; the Tenth Circuit affirmed. *Cunningham v. Federal Bureau of Prisons*, 709 F. App'x 886 (10th Cir. 2017).

Thereafter, on September 27, 2019, after the BOP filed its Motion to Dismiss before this Court, Mr. Bacote filed a Notice in the *Cunningham* action stating that, pursuant to 28 U.S.C. § 1715(e)(1), he was exercising his right not to be bound by the settlement agreement.[12] He subsequently filed a "Motion for Order Confirming Michael Bacote Jr. Appropriately Exercised His Right, Pursuant To 28 U.S.C. § 1715(e)(1), Not To Be Bound By Settlement Agreement (DOC. 449)."[13] That motion was stricken by the *Cunningham* Court by order dated April 10, 2020, stating "[b]ecause the Court entered a final judgment that resolved this dispute years ago, there is no case or controversy currently pending. Therefore, the relief Mr. Bacote is seeking would constitute an impermissible advisory opinion."[14]

## B. The *Cunningham* Settlement

The *Cunningham* settlement is contained in an "Addendum to Joint Motion to Approve

---

[9] The "Screening Class" consisted of "all persons who are confined at [ADX] at any time between the date of this order [January 17, 2017] and the end of the Compliance Period specified in Paragraph 29 of Exhibit 611." The "Treatment Subclass" consisted of "all persons who are confined at ADX at any time between the date of this order [January 17, 2017] and the end of the Compliance Period specified in Paragraph 30 of Exhibit 611 and who have been diagnosed by the Bureau or its representative personnel or contractors with a Covered Mental Illness as defined in Paragraph 25 of Exhibit 611." (*Cunningham*, at ECF No. 398, ¶ 4.) Exhibit 611 is the settlement agreement, titled "Addendum." (*Cunningham*, at ECF No. 382-1.)
[10] *Cunningham*, at ECF Nos. 398, 399.
[11] *Cunningham*, at ECF Nos. 400, 407, 408.
[12] *Cunningham*, at ECF No. 449.
[13] *Cunningham*, at ECF No. 455.
[14] *Cunningham*, at ECF No. 462.

Settlement" (hereafter "Release" or "Addendum") (ECF No. 56-1.) The provisions at issue are as follows:

- "Upon certification of the Screening Class and Treatment Subclass, all the Screening Class and Treatment Subclass members will be bound by the terms of this Addendum subject to the limitations on the preclusive effect of this Addendum specified in paragraphs (sic) 73, below." (Paragraph 16.)

- Paragraph 73 provides:
  "<u>Legal Release</u>. Plaintiffs, the members of Screening Class and Treatment Subclass … hereby release, waive, acquit, and forever discharge the United States, the Federal Bureau of Prisons, and its employees in their official capacities from, and are hereby forever barred and precluded from prosecuting, any and all claims, causes of action, or requests for any injunctive or declaratory relief, including costs, attorneys' fees, expenses, and/or interest, whether presently known or unknown, that have been asserted in this litigation, or that pertain to the treatment of ADX inmates' mental health; provided that in no event shall this Release be deemed to release or otherwise affect in any way: (1) any claim for money damages; (2) any claim by any inmate for a judicial determination concerning the inmate's personal mental health diagnosis; or (3) any claim based in whole or substantial part on events occurring during the Compliance Period and that does not concern one of the Monitored Initiatives."

- Paragraph 79 provides:
  "<u>Use of Addendum in Other Proceedings</u>. Neither the fact of this Addendum nor any statements contained herein may be used in any way, including in any other case or administrative proceeding, by any person, whether or not a party to this action, except that Defendant and its employees reserve the right to use this Addendum and the language herein to assert issue preclusion, res judicata, satisfaction, and release in other litigation matters seeking class or systemic relief regarding mental health services at ADX."

- Paragraph 82 provides, in relevant part:
  "Under no circumstances will the term of any provision of this Addendum, the parties' obligations thereunder, or the Court's jurisdiction extend beyond four years."

- The "Effective Date" is the date the *Cunningham* Court enters an order approving the Addendum (December 29, 2016) and the "Expiration Date" is the date in which the parties' obligations and the *Cunningham* Court's jurisdiction terminates, as set forth in Section VIII. (Paragraphs 34, 35.)

- Under Section VIII, the maximum term of the Settlement Agreement is four years, i.e., until December 29, 2020. But, in this case, it expired by its own terms on December 29, 2019. (Paragraphs 81-82.)

- The "Compliance Period" is the period of time starting with the Effective Date and ending on the Expiration Date. (Paragraph 36.) Here, that would be from December 29, 2016 until December 29, 2019.

- Federal law applicable in the Tenth Circuit applies, and Colorado law applies to the extent any state law applies. (Paragraph 71.)

(ECF No. 56-1; *Cunningham*, at ECF No. 382-1.)

### C. This Action

Mr. Bacote, appearing *pro se*, filed two complaints. (ECF Nos. 1, 10.) Mr. Bacote then filed a third complaint, but with the assistance of an attorney who provided limited representation who withdrew after filing the complaint. (ECF Nos. 20, 21, 23, 24, 70.[15]) New attorneys were therefore appointed for Mr. Bacote; they entered their appearances on April 24, 2019 and filed a fourth amended complaint on Mr. Bacote's behalf on August 2, 2019. (ECF Nos. 45-47, 55.[16]) In the operative fourth amended complaint, Mr. Bacote alleges four claims for relief, titled as follows:

- First Claim: "Violation of Plaintiff's Eighth Amendment Rights – Isolation Resulting in Deprivation of Basic Human Needs";

- Second Claim: "Violation of Plaintiff's Eighth Amendment Rights – Failure to Treat Serious Medical Need;

- Third Claim: "Violation of Plaintiff's Right to Be Free from Disability Discrimination in Violation of Section 504, of the Rehabilitation Act of 1973"; and

- Fourth Claim: "Violation of First Amendment – Retaliation."

As stated, the BOP moved to dismiss all claims as barred by the *Cunningham* Release and for failure to state a claim. The Recommendation on Dismissal mostly agreed. The Magistrate Judge recommended dismissal of all claims except for that part of the Second Claim

---

[15] The limited appearance counsel (Mark Ivandick) is the same attorney who represented the DLC in the *Cunningham* action.
[16] The Court also granted law student attorneys leave to appear on behalf of Mr. Bacote.

which seeks judicial determination of Mr. Bacote's mental health diagnoses, including whether he suffers from a serious mental illness. The parties' objections followed.

While the Recommendation on Dismissal was pending, Mr. Bacote moved to amend his complaint yet again. The Magistrate Judge recommended the Motion to Amend be denied. Mr. Bacote objects to the Recommendation on Amendment as well. Both recommendations and the parties' objections are now at issue here.

### III. DISCUSSION

#### A. THE RECOMMENDATION ON DISMISSAL

In order to determine whether to recommend dismissal, the Magistrate Judge decided the enforceability and reach of the *Cunningham* Release. Mr. Bacote challenges both decisions while the BOP challenges only the latter. The Court begins with the enforceability of the *Cunningham* Release as to Mr. Bacote.

##### 1. Mr. Bacote is Bound by the *Cunningham* Release

The Recommendation found Mr. Bacote is bound by the Release.[17] The Court agrees.

To start, the Court agrees with Mr. Bacote that the Class Action Fairness Act ("CAFA") applied to the *Cunningham* class action, even though it was certified for settlement purposes under Fed. R. Civ. P. 23(b)(2).[18] Whether Mr. Bacote could have "opted-out" of the settlement (he could not) or objected to the settlement (he could have and did) under Rule 23 does not answer the question of whether he could nonetheless not be bound by the agreement by invoking 28 U.S.C. § 1715(e)(1). The Recommendation on Dismissal found – and Mr. Bacote does not

---

[17] Mr. Bacote does not dispute that he is a member of the Screening Class.
[18] Under Rule 23(b)(2) a class action may be certified if "the party opposing the class [the BOP] has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

dispute[19] – that the proper place for Mr. Bacote to seek exemption from the Release was in the *Cunningham* action. Although Mr. Bacote ultimately did so, it was not until almost three years after final judgment was entered which bound him to the Release; the *Cunningham* Court rejected Mr. Bacote's exemption request because it came too late – there was no longer a live controversy in the *Cunningham* action.[20] Thus, based on the *Cunningham* Court's decision, the Court finds Mr. Bacote is bound by the Settlement Agreement.[21, 22]

    2. **The Scope and Reach of the Settlement Agreement**

***The Release Can Bar Individualized Relief.*** Essentially, the Recommendation on Dismissal found the Release (under paragraph 73) can be used against Mr. Bacote in his individual lawsuit before this court, and that paragraphs 79 and 82 do not support a contrary conclusion. Mr. Bacote objects to the Recommendation on Dismissal's conclusion on the application of paragraph 79 but not on the application of paragraph 82. And, upon a clear error review, the Court agrees with the Recommendation on Dismissal's conclusion as to the application of paragraph 82, and that paragraphs 73 and 82 are not in conflict. The Court now examines paragraph 79.

The Recommendation on Dismissal found that paragraph 79 has no bearing on the scope of the Release set forth in paragraph 73. Under Colorado law, contract interpretation is a

---

[19] ECF No. 116, p. 11 n.8 (Mr. Bacote states that "[t]he correct forum to determine the appropriateness of a class member's exercise of his Section 1715(e)(1) right is the court with jurisdiction over the settlement agreement.").
[20] That order was issued after the Recommendation on Dismissal. Mr. Bacote did not appeal the *Cunningham* Court's order.
[21] The Court recognizes that Mr. Bacote is not challenging the settlement approval or the Release but is, rather, seeking to exempt himself from the Release.
[22] The Recommendation on Dismissal provided other bases for why Mr. Bacote is bound, to which objections have been made. The Court finds it need not reach those other bases or objections, e.g., whether Mr. Bacote must make a showing that, if notified, the appropriate official would have objected. Nonetheless, in addition to being bound because he failed to properly raise the issue before the *Cunningham* Court, the Court notes the record supports the recommendation that Mr. Bacote is bound based on waiver; that Mr. Bacote waived his right to seek exemption by his failure to timely seek exemption in the *Cunningham* action. For example, Mr. Bacote could have raised the issue at any time before the *Cunningham* Court entered final judgment, so a determination could have been made by that court as to whether he was or was not bound by the Release.

question of law. *People ex rel. Rein v. Jacobs*, 465 P.3d 1, 11 (Colo. 2020). Courts should "interpret the contract in its entirety, seeking to harmonize and give effect to all of its provisions so that none will be rendered meaningless." *Id.* The "primary goal…is to determine and give effect to the intent of the parties," which is determined "primarily from the language of the instrument itself." *Id.* Therefore, where the written contract is "complete and free from ambiguity," the court "will enforce it according to its plain language." *Id.*

Paragraph 73 releases "any and all claims, causes of action, or requests for any injunctive or declaratory relief," with three exceptions. Paragraph 79 limits the use of the Release with some exceptions. Under Mr. Bacote's interpretation, paragraph 79 would be used to limit the release in paragraph 73. But, as the Recommendation on Dismissal found, the Release would then be limited to "other litigation matters seeking class or systemic relief regarding mental health services at ADX." This would create a sweeping limitation on the Release which does not exist. Thus, the Court agrees with the Recommendation on Dismissal that paragraph 79 does not limit the scope of the release and is essentially a standard non-admission of liability type of settlement provision. *See Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 384-85 (E.D. Pa. 2000) (discussing F.R.E. 408 and that "non-admission of liability" is a standard provision in settlement agreements). If anything, the "exception" in paragraph 79 appears to provide *additional* protection/coverage[23] for the BOP because while the release is by individuals the exception allows the BOP to raise the Release as a bar against actions seeking class or systemic relief.[24]

***The Release, as Interpreted, Does Not Violate Public Policy.*** Mr. Bacote argues that the Recommendation on Dismissal improperly found the Release does not violate public policy. The

---

[23] By this statement, the Court does not suggest that any such use may be effective in actions not before it.
[24] In addition, the Court also agrees with the BOP that Mr. Bacote is seeking systemic relief. Mr. Bacote's lawsuit here is against the BOP, and not specific to any particular official or any particular facility. Instead, the changes he seeks as to him is systemic – that it would apply to him regardless of where he may be an inmate. Thus, even under Mr. Bacote's interpretation of the exception, the BOP may raise the Release against him.

Court is not persuaded. As the recommendation found, the cases upon which Mr. Bacote relies cover pre-injury liability waivers and not arm's length negotiated settlement agreements. And, Mr. Bacote is not without remedies for alleged violations by the BOP; for example, Mr. Bacote may bring an action for money damages, and a claim seeking a judicial determination concerning his personal mental health diagnosis (as he has done here). Moreover, while Mr. Bacote released certain claims and remedies in exchange for numerous BOP policy changes, Mr. Bacote was not without remedies if the BOP failed to live up to its negotiated obligations under the Release. The Release contains dispute resolution and enforcement provisions. Accordingly, Mr. Bacote's objection is overruled.

***No Improper Consideration of Parole Evidence.*** Mr. Bacote's objection asserts the Magistrate Judge improperly considered evidence presented by the BOP. Prior to filing his objection, Mr. Bacote had filed the Motion to Reconsider which argued that the Magistrate Judge erred in relying on the BOP's testimony and should consider Mr. Bacote's "new evidence" of the parties' intent consisting of the declaration of class counsel from the *Cunningham* action. Mr. Bacote's assertions, however, do not withstand scrutiny.

The Court has reviewed the entire hearing on the Motion to Dismiss that was held before the Magistrate Judge and finds that while counsel for the BOP presented argument he did not present testimony. Moreover, Mr. Bacote fails to show why the Court should or could consider parole evidence in an agreement which the Recommendation on Dismissal found was unambiguous and which no party contends is ambiguous. *See Ad Two, Inc. v. City & Cty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000) ("Extraneous evidence is only admissible to prove intent where there is an ambiguity in the terms of the contract."). Accordingly, the Court finds no error in the Magistrate Judge's denial of the Motion to

11

Reconsider and no improper consideration of any parole evidence. Mr. Bacote's objection is overruled.

### 3. The Release Bars *Some* of Mr. Bacote's Claims

***First Claim Based on the Eighth Amendment – Basic Human Needs.*** The Recommendation on Dismissal found Mr. Bacote's First Claim alleging "isolation resulting in deprivation of basic human needs" is barred by the Release because it "pertain[s] to the treatment of ADX inmates' mental health." Mr. Bacote objects, arguing his claim is challenging his conditions of confinement not the treatment of his serious medical needs. The Magistrate Judge was not persuaded by this argument; this Court is also not persuaded.

"To present a valid Eighth Amendment claim based on prison conditions, a plaintiff must allege an 'unquestioned and serious deprivation of basic human needs.'" *Gowadia v. Stearns*, 596 F. App'x 667, 674 (10th Cir. 2014) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Thus, proof of a specific deprivation is required as "imprisonment at the ADX facility does not violate the Eighth Amendment's prohibition of cruel and unusual punishment." *Id.* (citations omitted). *See Ajai v. United States*, 293 F. App'x 575, 582-84 (10th Cir. 2008) (lock-down for 23-hours per day in extreme isolation, even in combination with other deprivations, insufficient to maintain Eighth Amendment claim). Here, at bottom, Mr. Bacote claims his conditions of confinement (isolation) are unconstitutional *because* of his serious mental illness ("SMI") and intellectual developmental disabilities ("IDD") for which he alleges he had been denied mental health treatment. (ECF No. 55, e.g., at ¶¶ 52-55, 76 (prayer for declaratory judgment that the BOP's treatment of Mr. Bacote's SMI and IDD violates Eighth Amendment).) Accordingly, the Court agrees Mr. Bacote's claim here "pertain[s] to the treatment of ADX inmates' mental health" barred under the Release.

***Second Claim for Violation of the Eighth Amendment – Treatment of Serious Medical Need.*** The Recommendation on Dismissal found the second claim "pertain[s] to the treatment of ADX inmates' mental health" except to the extent it seeks a judicial determination of Mr. Bacote's mental health diagnosis because this portion of the claim falls within the second exception to the Release. No party objects to this determination and, upon clear error review, the Court agrees. Accordingly, the second claim, so limited, may go forward.

***Third Claim for Violation of the Rehabilitation Act.*** The Rehabilitation Act prohibits discrimination against a qualified individual with a disability "under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a). The Recommendation on Dismissal found Mr. Bacote's Rehabilitation Act claim is barred because it "pertain[s] to the treatment of ADX inmates' mental health." Mr. Bacote contends the recommendation reads the release too broadly and that he is seeking accommodation, not treatment. The Court partly agrees.

Mr. Bacote's claim is based on several alleged requests for "accommodation." At issue is whether these requests "pertain" to the treatment of Mr. Bacote's health so that they are barred by the Release. The accommodation requested includes:

> (1) that his psychotropic medications be administered whole without crushing them, or that he be allowed to view the pills before crushing. This refusal to accommodate Mr. Bacote's request constitutes a constructive denial of mental health treatment that prevents him from participating in programming, especially since Mr. Bacote has not abused his psychotropic medications; (2) because of Mr. Bacote's functional illiteracy caused by a combination of SMI, IDD, and a closed head injury, that he be provided with assistance that would allow him to use and comply with the grievance/administrative remedies policy and participate in programs and receive the benefits associated with completing program requirements; (3) that disciplinary hearing officers not impose punishments for his offending behaviors that are a manifestation of his SMI, IDD, and closed head injury[]; (4) that ADX should provide Mr. Bacote with an effective and adequate behavioral modification program to accommodate his IDD; and (5) that transfer of Mr. Bacote to a BOP facility that can adequately treat his combined SMI and

> IDD conditions that are sufficiently severe, persistent, and disabling could accommodate his treatment needs.

(ECF No. 55, at ¶ 65.) The Court finds it self-evident that the first, fourth, and fifth requests pertain to the treatment of Mr. Bacote's mental health; indeed, he says so as much as to the first request. And, Mr. Bacote's use of the word "accommodate" does not remove the request to provide Mr. Bacote with a behavioral modification program, which is meant to address – treat – his IDD, to something that does not "pertain to the treatment of ADX inmates' mental health."

Mr. Bacote's second and third requests, however, are a different matter. While Mr. Bacote allegedly has IDD and SMI, the requests here do not pertain to the treatment of these alleged mental health issues. Here, Mr. Bacote requests assistance in helping write grievances and complete programming offered by the BOP, and that he not be punished for his offending behaviors. Thus, while they pertain to the alleged existence of his mental health issues, these requests – as currently pled – do not pertain to the treatment of such issues. Thus, on this record, the Court finds these two requests are not barred by the Release.

But that does not end the inquiry. The Recommendation on Dismissal did not reach the BOP's other argument of why Mr. Bacote's Rehabilitation Act claim fails – the alleged lack of a private right of action against Executive agencies.

Section 794a of the Rehabilitation Act sets forth specific remedies which are available – remedies for discrimination in employment and for discrimination "by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title." 29 U.S.C. § 794a(a)(1)-(a)(2). Notably, there is no remedy specifically provided for discrimination "under any program or activity conducted by any Executive agency." And, in *Lane v. Pena*, 518 U.S. 187 (1996), the Supreme Court held that Congress did not waive the federal government's sovereign immunity against awards of monetary damages for violation of Section 794(a). The

14

Supreme Court, however, did not decide whether there was any waiver for injunctive relief as the government did not dispute the award of such relief by the lower court. The Tenth Circuit has also not decided the issue and other courts which have done so have reached differing conclusions. *See, e.g., Cooke v. U.S. Bureau of Prisons*, 926 F. Supp. 2d 720, 731 (E.D.N.C. 2013) (recognizing some lower courts have interpreted *Lane*, *supra*, to mean that a plaintiff may pursue an implied private right of action under section 504(a) against an Executive agency of the United States so long as the plaintiff seeks only injunctive relief (collecting cases)); *De Dandrade v. United States Dep't of Homeland Sec.*, 367 F. Supp. 3d 174, 190 (S.D.N.Y. 2019) (recognizing that courts have reached conflicting results and concluding that no private cause of action exists (collecting cases)). Some courts, including one in this District,[25] have found an implied right of action exists based Section 794a(b), which states that "[i]n any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 29 U.S.C. § 794a(b). This Court respectfully disagrees.

"Because only Congress can create a cause of action to enforce federal law," a court's "inquiry necessarily focuses on Congress' intent" in enacting the statute at issue. *See Cuba Soil & Water Conservation Dist. v. Lewis*, 527 F.3d 1061, 1063 (10th Cir. 2008). A court's task is to determine whether the statute displays an intent to create a right and a remedy in favor of a plaintiff. *Id.* That a right exists, however, is not dispositive of whether a remedy exists. *Id.* at 1064. And, if "Congress has expressly provided for enforcement of a statute by a particular means, [courts] are hesitant to look beyond that means because 'the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" *Id.*

---

[25] *See Brown v. Cantrell*, No. 11-CV-00200-PAB-MEH, 2012 WL 3264292, at *6 (D. Colo. Feb. 9, 2012) (finding private right of action for injunctive relief but nonetheless recommending claim be dismissed for failure to exhaust administrative remedies), recommendation accepted, 2012 WL 4050300 (D. Colo. Sept. 14, 2012).

(internal brackets omitted) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)). Courts "are not authorized to create a cause of action, 'no matter how desirable that might be as a policy matter or how compatible with the statute.'" *Id*. (quoting *Sandoval*, 532 U.S. at 286). Further, "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text," and "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane*, 518 U.S. at 192.

In this case, as the Supreme Court stated, Congress did not intend to treat all Section 794a defendants alike with regard to remedies. *Lane*, 518 U.S. at 193. And, here, Congress specifically created remedies against recipients of federal assistance or federal providers of such assistance under Section 794a by adopting remedies under Title VI of the Civil Rights Act of 1964. Congress, however, could have but did not create such remedies as against Executive agencies. And, as stated by the *De Dandrade* Court:

> By adding a broad attorney fees provision [§ 794a(b)] and broadening the rights-granting language under section 504 [§ 794(a)] [adding "under any program or activity conducted by any Executive agency"] but not amending the remedies-granting language of section 505 [§ 794a(a)], Congress may be understood to have made a deliberate choice to maintain a limited cause of action to enforce section 504.

*De Dandrade*, 367 F. Supp. 3d at 192. Accordingly, even if not barred by the Release, the Court finds no implied right of action – or waiver of sovereign immunity – here.

### 4. Mr. Bacote Fails to State a Claim for Violation of the First Amendment

Plaintiff's Fourth Claim alleges the BOP violated his First Amendment rights by retaliating against him for his role in the *Cunningham* action. The Recommendation on Dismissal found this claim was not precluded by the Release but should nonetheless be dismissed for failure to state a claim. Specifically, the recommendation found that Mr. Bacote's allegations fail to satisfy the third requirement for a retaliation claim: that the BOP's action was substantially

16

motivated as a response to Mr. Bacote's exercise of his constitutionally protected conduct – the "but for causation element."

Mr. Bacote's objection argues the Recommendation on Dismissal relied on matters which are irrelevant or are not within the complaint, and that causation has been shown by allegations of temporal proximity. Adverse action in close temporal proximity to the protected activity may be considered in establishing a causal connection, *see Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010), but the Court is not persuaded that the allegations here are sufficient.

Mr. Bacote relies on events which alleged occurred in 2011 and 2012 and directs the Court to paragraphs 28, 29, 21, 32, and 72 of his complaint in support of his temporal proximity argument. But, as the BOP argues, alleged events in 2011 cannot support a retaliation claim because Mr. Bacote's alleged protected activity occurred in *2012*. In order words, the BOP could not have retaliated before any alleged protected activity occurred.

Mr. Bacote's reliance on allegations of events which occurred in 2012 is similarly unavailing. As the BOP contends, Mr. Bacote alleged he filed the *Cunningham* action and the BOP and its unidentified agents took adverse actions against him, but there are no allegations sufficient to link *one* to the *other*, i.e., that the alleged actions occurred because of Mr. Bacote's exercise of his First Amendment rights. After all, "a plaintiff must include enough context and detail to link the allegedly adverse … action to a…retaliatory motive with something besides sheer speculation.…A plaintiff should have—and must plead—at least some relevant information to make the claims plausible on their face." *Bekkem v. Wilkie*, 915 F.3d 1258, 1274–75 (10th Cir. 2019) (quotation marks and alterations omitted). This, Mr. Bacote has not done.[26]

In light of the Court's determination that Mr. Bacote fails to state a claim, it need not

---

[26] In light of the Court's determination, it is irrelevant whether the Recommendation on Amendment allegedly relied on matters not within the complaint.

determine whether the claim would otherwise be barred by the Release. Accordingly, for this reason, the Court declines to accept the Recommendation on Dismissal that this claim is not barred because whether it is or is not is moot. For this reason, the BOP's objection is denied as moot.

### B.  THE RECOMMENDATION ON AMENDMENT

The Magistrate Judge recommended denial of Plaintiff's Motion to Amend, citing several reasons including futility, unfair prejudice, and undue delay. The parties argue over whether the recommendation is dispositive or non-dispositive. The Court finds it need not resolve this dispute because, even assuming it is dispositive, it agrees with the recommendation on de novo review.

First, the Court agrees with the Recommendation on Amendment finding undue delay. "In the Tenth Circuit, untimeliness alone is an adequate reason to refuse leave to amend." *Duncan*, 397 F.3d at 1315; *see also Makeen Inv. Grp., LLC as trustee for Makeen Family Children's Tr. v. Colorado*, 825 F. App'x 565, 570-71 (10th Cir. 2020) (undue delay sufficient basis for denial of leave to amend). Mr. Bacote has already amended his complaint several times and fails to sufficiently show why he should be allowed to amend yet another time – again through counsel[27] – three years after he filed his action. Moreover, Mr. Bacote was ostensibly offered another opportunity to amend prior to the filing of the BOP's Motion to Dismiss. Under this Court's Civil Practice Standards, the parties were required to confer to determine if any alleged defect subject to a Fed. R. Civ. P. 12(b) motion is correctable by amendment. But no amendment was sought or stipulated to by any party. (*See* ECF No. 56, p. 2 n.1.)

Next, the Court agrees any amendment now would be unduly prejudicial to the BOP, especially in light of the number of amendments and the motions practice which preceded the

---

[27] The Court recognizes Plaintiff did not always have counsel. However, his last two complaints were filed by counsel.

Motion to Amend. For example, as the Recommendation on Amendment recognized, allowing leave to amend would render the Recommendation on Dismissal moot and would likely start a new round of motions practice.

The Court finds that the two reasons stated above are sufficient grounds for denial and need not decide futility. Nonetheless, even a cursory review shows some of the allegations are futile, such as allegations that are time barred.

In summary, the "pleading and amendment cycle"[28] must stop at some point. Here, it stops at Mr. Bacote's last operative complaint. Accordingly, Mr. Bacote's objection is overruled.

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED**

(1) That Plaintiff's objection (ECF No. 116) to the Minute Order (109) is OVERRULED;

(2) That Plaintiff's objection (ECF No. 116) to the Recommendation on Dismissal is OVERRULED as stated herein;

(3) That Defendant's objection (ECF No. 101) to the Recommendation on Dismissal is DENIED AS MOOT;

(4) That the Recommendation on Dismissal (ECF No. 92) is NOT ACCEPTED IN PART AS MOOT and ACCEPTED IN PART as stated herein;

(5) That Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART as follows:

  a) That Plaintiff's First and Fourth Claims for Relief are dismissed with prejudice;

  b) That Plaintiff's Second Claim for Relief is dismissed with prejudice *except* to the extent it seeks a judicial determination of Plaintiff's mental health diagnosis. This portion of the second claim, so limited, may go forward;

---

[28] ECF No. 162, p. 9.

    c) That Plaintiff's Third Claim for Relief is dismissed *with* prejudice as to his allegations pertaining to his first, fourth, and fifth requests for accommodation but dismissed *without* prejudice as to his allegations pertaining to his second and third requests for accommodation;

(6) That Plaintiff's Objection (ECF No. 155) on the Recommendation on Amendment is OVERRULED;

(7) That the Recommendation on Amendment (ECF No. 149) is ACCEPTED; and

(8) That Plaintiff's Motion to Amend (ECF No. 133) is DENIED.

DATED this 26th day of January, 2021.

                        BY THE COURT:

                        RAYMOND P. MOORE
                        United States District Judge